IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MARVIN REYES, *individually and on behalf of all others similarly situated,* | Civil Case Number: |
| Plaintiff, | **CIVIL ACTION** |
| -v- | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| TRANS UNION, LLC, | |
| Defendant. | |

## I. PRELIMINARY STATEMENT

1. This is a consumer class action brought for redress of violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. ("FCRA"), by Defendant Trans Union, LLC, a consumer reporting agency ("CRA").

*Consumer Reporting "Inquiries"*

2. An "inquiry" is a record that identifies the person or business that obtained a consumer's credit report from a CRA, that person or business's address, and the date on which the person or business acquired the consumer's credit report.

3. Because inquiries identify the persons and businesses *from whom* the subject of a credit report has sought credit and *how often* that consumer seeks credit, they are a part of the consumer's credit history and included in that consumer's credit report.

4. Inquiries generally have a negative impact on a consumer's credit score (*i.e.*, the more inquiries, the lower the score) because scoring programs consider consumers who make multiple applications for credit riskier than consumers who do not.

5. Like other items on consumer reports, inquiry information is often inaccurate, and inquiries may appear on a consumer's credit report notwithstanding the fact that the consumer did

not actually seek credit. This can occur when, for example, a CRA provides a consumer's report to a creditor who requested a report on a different person who may have a similar name or in cases of fraud or unauthorized access.

6. Including inaccurate inquiries or inquiries that do not belong to the consumer who is the subject of the credit report misrepresent the consumer's true credit history, unfairly lowering the consumer's credit score.

*Consumers' Rights to Dispute Information in Their Credit Files*

7. To combat the problems noted above, Congress included a mechanism in the FCRA by which consumers may dispute inaccurate or incomplete information in their credit files.

8. When a consumer notifies a CRA that he or she disputes "the completeness or accuracy of *any item* of information contained in [his or her] file," the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file" within 30 days of receiving the consumer's dispute. 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

9. As part of the reinvestigation, a CRA must "provide notification of the dispute to any person who provided any item of information in dispute," and the notice must "include all relevant information regarding the dispute that the agency has received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

10. Contacting the source of the disputed information is critical to a reasonable reinvestigation. When, for example, the wrong consumer's report was provided to the source of the disputed information, the source may know it received a report pertaining to a consumer who is not the person with whom it was dealing. CRAs can also compare the identifying information

of the consumer whose report was in fact provided with the identifying information in the possession of the source who requested the credit report.

*The Instant Matter*

11. This case is about Trans Union's failure to fulfill its statutory duties with respect to consumer disputes of inquiry information.

12. Trans Union does not reinvestigate disputed inquiries; does not notify the source of the disputed inquiry about the consumers' disputes of the information; does not provide the source with all the relevant information about the dispute; and does not delete disputed inquiries that it cannot verify.

13. Moreover, rather than complying with the FCRA, Trans Union attempts to forego its obligations and put the onus on the consumer to investigate and rectify inaccurate inquiries with the furnisher.

14. These failures not only violate consumers' FCRA rights to dispute described above, they also undermine the accuracy of information within consumer reports because consumers often notice inaccurate information of which the reporting CRA is unaware. The FCRA's dispute procedure is the *singular* method (outside of litigation) by which consumers can correct errors in their credit files.

15. Trans Union has violated the requirements of FCRA sections 1681i(a)(1) and (2) by failing to reinvestigate disputed inquiries and failing to notify the source of the inquiry about the consumer's dispute. As a result, Trans Union harmed Plaintiff and, upon information and belief, thousands like him across the United States, and undercut the healthy functioning of the consumer credit system by providing inaccurate and misleading credit history information about consumers to potential creditors and service providers.

## II.     JURISDICTION *and* VENUE

16.     This Court has federal question jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant regularly sells its products and services in this District.

## III.     PARTIES

18.     Plaintiff Marvin Reyes ("Plaintiff") is a natural person who resides in the State of Florida. He is a "consumer" as defined by FCRA section 1681a(c).

19.     Defendant Trans Union, LLC ("Trans Union") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

20.     Trans Union is a limited liability company with its principal place of business at 555 W. Adams Street, Chicago, IL 60661.

## IV.     FACTUAL ALLEGATIONS

*Plaintiff Learns of a Third-Party's*
*Unauthorized Access to His Credit Report*

21.     Sometime prior to February of 2024, Plaintiff reviewed his Trans Union consumer credit reports and noticed that two hard inquiries were being reported for Kohls/Capone. The inquiries reflected Kohls/Capone obtaining his credit reports on December 15, 2023 and January 20, 2024.

22.     Plaintiff was understandably confused, as he had never authorized Kohls or Capital One to obtain his consumer reports.

23. Nonetheless, Trans Union was reporting that these entities had twice obtained his Trans Union report.

24. Accordingly, Plaintiff called both Kohls and Capital One to inquire about these purported inquiries. Each entity responded that they could find no application or documentation associated with Plaintiff in which he had given permission to access and obtain his consumer reports.

*Plaintiff Disputes the Unauthorized Inquiry to Trans Union and*
*Trans Union Fails to Reinvestigate His Disputes*

25. Thereafter, on or about February 22, 2024, Plaintiff sent a letter to Trans Union disputing the unauthorized Kohls/Capone inquiries, specifically indicating that he had contacted Kohls and Capital one who had indicated they had no record of authorization associated with him and requesting their removal from his credit file.

26. Trans Union received Plaintiff's letter, but did not conduct a reinvestigation of his dispute, notify Kohls/Capone of the dispute, or remove the inquiry from Plaintiff's credit file.

27. Instead, on or about February 28, 2024, Trans Union sent Plaintiff a form letter that offered a generic "Explanation of the Inquiries on Your Credit Report" and stated, in part, that:

> You recently contacted Trans Union regarding an inquiry. An inquiry is posted on your Trans Union credit report to notify you that a company has received your credit information from Trans Union…Each company that received your credit report will be listed in the inquiry section of your Trans Union personal credit report along with their contact information. Please note, a company doesn't always need your authorization to receive your credit repost as long as they have a permissible purpose… If you think an inquiry was made without a permissible purpose, we strongly encourage you to reach out to the company who received your credit report to find out whether they have opened an account in your name. ***The company can investigate*** and, if they determine someone fraudulently applied for credit in our name, they can close that account and contact Trans Union requesting removal of the inquiry… (emphasis added).

28. As a direct and proximate result of Trans Union's false statements and refusal to reinvestigate his dispute of the Kohls/Capone inquiry, Plaintiff suffered, without limitation, the following injuries:

5

      A.      The continued presence of the Kohls/Capone inquiry on his credit report and corresponding reduction of his credit score;

      B.      Deprivation of the information that Trans Union had not reinvestigated his dispute or contacted Kohls/Capone which, at a minimum, would have armed him with additional information concerning his creditworthiness;

      C.      Distress from getting the run around from Trans Union concerning his disputes and what Trans Union would actually do to investigate them;

      D.      Denials of credit; and

      E.      Lost time and resources expended in connection with making multiple ignored disputes of the Kohls/Capone inquiry to Trans Union and directly contacting Kohls and Capital One themselves only to learn that it would not help.

*Trans Union Is Aware of Its Duties to
Reinvestigate Consumer Disputes*

29. Trans Union has long been aware of its obligations to reinvestigate inquiry disputes. The plain, unambiguous language of the FCRA requires a reasonable reinvestigation of "the completeness or accuracy of *any item* of information contained in a consumer's file" that is disputed by that consumer. 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

30. Regulatory guidance from the Federal Trade Commission further explained a CRA's duty to reinvestigate disputed inquiries or delete them, as follows:

> When a CRA receives a dispute from a consumer alleging that an inquiry that appears in his/her file was not made by a person who had a permissible purpose for obtaining the consumer report, and those allegations are supported **by the CRA investigation**, the CRA has two options. It may either delete the inquiry as inaccurate, or amend the file to make the item "complete" by reflecting clearly that the inquiry was generated by a party who did not have a permissible purpose to obtain a consumer report on the consumer. (emphasis added).

FEDERAL TRADE COMMISSION, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations*, 77 (2011) available at

6

https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf

31. Moreover, courts in the Eleventh Circuit and throughout the country, including the Third Circuit Court of Appeals in a decision *against Trans Union*, recognize that CRAs must reinvestigate disputes of *all* information in a consumer's file, even if that information is kept off site with another company but placed on Trans Union credit reports. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711-13 (3d Cir. 2010); *see also Gibbs v. Trans Union LLC*, No. 2:17-CV-125, 2018 U.S. Dist. LEXIS 250239, at *7 (S.D. Ga. Aug. 15, 2018) ("A credit reporting agency's duty to reinvestigate is triggered by notification by the consumer of a dispute in the completeness or accuracy of information contained in the consumer's file."); *Nelson v. Experian Info. Sols., Inc.*, No. 4:21-cv-894-CLM, 2023 U.S. Dist. LEXIS 143328, at *5 (N.D. Ala. Aug. 16, 2023) (discussing CRAs obligation to reinvestigate "any item of information contained in a consumer's file" disputed by the consumer); *Collins v. Experian Info. Sol's, Inc.*, 775, F.3d 1330, 1335 (11th Cir. 2015); *Morris v. Trans Union Info. Serv's, LLC*, 457 F.3d 460, 466-68 (5th Cir. 2006); *Bryant v. TRW, Inc.*, 689 F.2d 72 (6th Cir. 1982); *Dennis v. BEH-1, LLC*, 520 F.3d 1067 (9th Cir. 2008).

32. Concerning a CRA's duty to reinvestigate disputes of inquiry information, one court held that:

> More than simply comporting with the plain language of the statute, [requiring reinvestigation of inquiry disputes] best serves to advance the purpose of FCRA's reinvestigation requirements – ensuring the accuracy of the information used by creditors to determine a consumer's creditworthiness …. The interests of consumers and potential creditors are best served by deletion of hard inquiries that [the CRA] itself admits "misstate[ ]" the consumer's credit history. Consumer's credit scores are negatively impacted by fraudulent or inaccurate credit inquiries, and creditors are provided with an inaccurate portrait of the consumer's credit history. The only entity that benefits is [the CRA], which does not have to expend resources reinvestigating disputed credit inquiries.

*Steed v. Equifax Info. Servs., LLC*, No. 1:14-CV-0437-SCJ, 2016 U.S. Dist. LEXIS 185258, at *9 (N.D. Ga. Aug. 31, 2016) (citations omitted).

7

*Trans Union Refuses to Reinvestigate Consumers' Disputes of*
*Inquiry Information for Pecuniary Gain*

33. Upon information and belief, Trans Union fails to reinvestigate inquiry disputes simply to further its bottom line.

34. Specifically, compliance the FCRA's dispute reinvestigation duties would require Trans Union to expend additional financial and human resources. By ignoring disputes of inquiry information, Trans Union realizes substantial savings.

35. Trans Union itself is well aware of its obligations to reinvestigate disputed information, including inquiry information, as it has been the subject of litigation for such conduct before.

36. Nevertheless, Trans Union, as a matter of policy and standard practice, fails to comply with these legal requirements to which it is subject.

37. Thus, at all times relevant to Plaintiff's claims, Trans Union's conduct as described in the preceding paragraphs was the result of its standard policies and practices adopted in reckless disregard of consumers' rights under the FCRA.

## V.   CLASS ACTION ALLEGATIONS

*Class Definition*

38. Plaintiff brings this class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, based on Trans Union's failure to comply with FCRA sections 1681i and, subject to additional information gained in discovery, seeks to represent the following class:

> During the period beginning two years prior to the filing of this action and through the time of class certification, all persons residing in the United States and its Territories to whom Trans Union sent a letter materially identical to the letter it sent to Plaintiff.

39. Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

40. Specifically excluded from the Class are: (a) all federal court judges who preside

over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases of all their claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

*Numerosity*

41.     The class is so numerous that joinder of all members is impracticable. Although the precise number of class members is known only to Trans Union, upon information and belief, Trans Union receives thousands of consumer disputes each day. Accordingly, Plaintiff estimates that the class has thousands, if not hundred of thousands, of members.

*Commonality*

42.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The principal questions are whether Trans Union violated the FCRA by failing to reinvestigate and contact the source of the disputed inquiry or delete it; and whether its violations were willful.

*Typicality*

43.     Plaintiff's claims are typical of the claims of the class, which all arise from the same operative facts and are based on the same legal theory: a dispute to Trans Union regarding an inquiry, which Trans Union did not reinvestigate or delete as required by 15 U.S.C. § 1681i(a)(1) and (2).

44.     Class members will have received the same or similar form letter that Trans Union sent to Plaintiff and all claims will arise from consumer disputes made within the two years prior to the filing of this action.

*Adequacy*

45.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's

interests coincide with, and are not antagonistic to, other Class members' interests. Additionally, Plaintiff has retained counsel experienced and competent in complex, commercial, multi-party, consumer, and class-action litigation. Plaintiff's counsel have prosecuted complex consumer class actions across the country, including under the FCRA.

*Predominance & Superiority*

46. Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if the Class members themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

47. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VI.   CAUSES OF ACTION

### COUNT I
### 15 U.S.C. § 1681i

48. Plaintiff incorporates the paragraphs 1-47.

49. At all times pertinent hereto, Transunion was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

50. The FCRA provides that "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file". 15 U.S.C. § 1681i(a)(1).

51. Further, the FCRA provides that "[b]efore the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller." 15 U.S.C. § 1681i(a)(2).

52. Trans Union willfully and negligently failed to comply with the requirements of FCRA sections 1681i(a)(1) and (2) by failing to: (a) reinvestigate the inquiries disputed by Plaintiff and the Class members, notify the source of the inquiries about the disputes, and provide the sources with all relevant information Plaintiff and the Class members provided to Trans Union; or (b) delete the inquiries.

53. As a direct and proximate result of Trans Union's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff and the Class members have been harmed, as explained above.

54. Pursuant to FCRA sections 1681n and 1618o, Trans Union is liable to Plaintiff and all class members for its failure to comply with FCRA sections 1681i(a)(1) and (2) in an amount equal to the sum of (1) statutory damages of up to $1,000 per violation, (2) punitive damages in

11

an amount to be determined by the jury, (3) actual damages in an amount to be determined by the jury, (4) attorney's fees, and (5) costs.

## VII.    PRAYER *for* RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a.  An order certifying the proposed class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the class;

b.  An order declaring that Defendant's actions are in violation of the FCRA;

c.  Statutory damages in the amount of not less than $100 and not more than $1,000 per violation per class member, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

d.  Actual damages in an amount to be determined by the jury, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

e.  Punitive damages to be determined by the jury, pursuant to 15 U.S.C. § 1681n(a)(2);

f.  Attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(b); and

g.  Such other relief as may be just and proper.

## VIII.    JURY TRIAL DEMAND

55.  Plaintiff demands a jury trial on all claims.

Dated: March 18, 2024

By:    /s/ Joseph Kanee
Joseph H Kanee, Esq.
MARCUS & ZELMAN, LLC
4000 Ponce de Leon, Suite 470
Coral Gables, Florida 33146
(786) 369-1122 telephone
(732) 298-6256 facsimile
joseph@marcuszelman.com

*Attorney for Plaintiff and the Class*