UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-21045-ALTMAN

**MARVIN REYES**, *individually and on behalf of all others similarly situated*,

    *Plaintiff*,

v.

**TRANS UNION, LLC**,

    *Defendants*.

_____/

## ORDER

The Defendant, Trans Union, LLC, has filed a Motion to Dismiss or Stay Under First-Filed Rule ("Motion") [ECF No. 33], pending the resolution of a similar class action before the U.S. District Court for the Eastern District of Pennsylvania, *see Norman v. Trans Union LLC*, No. 2:18-cv-05225 (E.D. Pa. filed Dec. 5, 2018) (the "*Norman* Case").[1] After careful review of the Motion, the record, and the governing law, we hereby **GRANT** the Defendant's Motion [ECF No. 33] and **STAY** this case.

### THE FACTS

"This is a consumer class action brought for redress of violations of the Fair Credit Reporting Act . . . ("FCRA"), by Defendants Trans Union, LLC[.]" Amended Complaint [ECF No. 29] ¶ 1. The Plaintiff alleges that the FCRA imposes obligations on credit reporting agencies (like Trans Union) to "conduct a reasonable reinvestigation to determine whether [ ] disputed information [in a credit report]

---

[1] The matter is fully briefed and ripe for adjudication. *See* Opposition to Defendant's Motion to Stay ("Response") [ECF No. 34]; Reply Memorandum in Support of Motion to Dismiss or Stay ("Reply") [ECF No. 37].

is inaccurate and record the current status of the disputed information, or delete the item from the file," and to provide notice "of the dispute to any person who provided any item of information in dispute[.]" *Id.* ¶¶ 9–10 (quoting 15 U.S.C. § 1681i(a)(1)(A), (2)(A)). Trans Union, the Plaintiff contends, has shirked its responsibilities under the FCRA by failing to "reinvestigate disputed inquiries" and instead "put[ting] the onus on the customer to investigate and rectify inaccurate inquiries with the furnisher." *Id.* ¶¶ 13–14.

Our Plaintiff, Marvin Reyes, "reviewed his Trans Union consumer credit reports and noticed that two hard inquiries were being reported for Kohls/Capone. The inquiries reflected Kohls/Capone obtaining his credit reports on December 15, 2023 and January 20, 2024." *Id.* ¶ 22. Reyes "had never applied for credit at these times, or anywhere around these times, with Kohls or Capital One[,]" and Kohls and Capital One confirmed that "they could find no application or documentation associated with Plaintiff in which he had given permission to access and obtain his consumer reports, nor indicated they had any record that they had obtained his credit reports." *Id.* ¶¶ 23, 25. Reyes sent a letter to Trans Union, disputing "the unauthorized and inaccurate Kohls/Capone inquiries" on February 22, 2024, but Trans Union refused to "conduct a reinvestigation of his dispute" and instead sent a "form letter" to Reyes, suggesting that Reyes "reach out to company who received your credit report," so that *they* (not Trans Union) "can investigate and . . . determine [if] someone fraudulently applied for credit in [your] name[.]" *Id.* ¶¶ 28–30.

Reyes alleges that Trans Union purposely refused to investigate in order to avoid "expend[ing] additional financial and human resources[,]" *id.* ¶ 41, that it is willfully failing "to comply with [the] legal requirements" of the FCRA, *id.* ¶ 43, and that there is a viable class of individuals who (like Reyes) have been harmed because of Trans Union's "standard policies and practices adopted in reckless disregard of consumers' rights under the FCRA[,]" *id.* ¶ 44. Reyes proposes that he represent the following class:

2

> During the period beginning two years prior to the filing of this action and through the time of class certification, all persons residing in the United States and its Territories to whom Trans Union sent a letter materially identical to the letter it sent to Plaintiff.

*Id.* ¶ 45.

Trans Union filed a motion to dismiss or stay this case under the "first-filed rule." According to Trans Union, Reyes's case is "substantively identical" and involves "the same legal issues and substantial factual overlap" as the *Norman* Case pending in the Eastern District of Pennsylvania. Motion at 1. Trans Union also avers that the district court in *Norman* certified a nationwide class that "overlaps" with Reyes's proposed class. *Id.* at 1–2. Reyes responds that the "application of the first-to-file rule . . . would cause substantial prejudice to Plaintiff and the proposed class members" because the *Norman* Case "involves an entirely exclusive and narrowly certified class, meaning neither Plaintiff's nor the proposed class members' interest are represented or preserved in that action." Response at 2.

## ANALYSIS

Where, as here, "two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). This rule is "a doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency[.]" *Alhassid v. Bank of Am., N.A.*, 2014 WL 2581355, at *2 (S.D. Fla. June 9, 2014) (Moreno, J.) ("The 'first-to-file' rule is, that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions." (cleaned up)). In deciding whether to apply the first-to-file rule, we consider "(1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues." *Chapman v. Progressive Am. Ins. Co.*, 2017 WL 3124186, at *1 (N.D. Fla. July 24, 2017) (Rodgers, C.J.). But "the first-to-file rule is not a hard-and-fast rule." *Cardenas v. Toyota Motor Corp.*, 2019 WL 4705843, at *2 (S.D. Fla. Sept. 26, 2019) (Moreno, J.) (citation omitted). A party "objecting to jurisdiction in the first-filed forum [carries] the

burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." *Manuel*, 430 F.3d at 1135. In our case, these factors strongly favor a stay.

*First*, the *Norman* Case was filed nearly five-and-a-half years before ours and is scheduled for trial on January 21, 2025. *See* Apr. 8, 2024 Order, *Norman v. Trans Union, LLC*, No. 2:18-cv-05225 (E.D. Pa. Apr. 8, 2024), ECF No. 125 at 1 ("[I]t is hereby ORDERED that trial in this action shall commence with jury selection on Tuesday, January 21, 2025[.]"). Although Reyes concedes that the *Norman* Case was filed first, he argues that "the first-to-file doctrine is concerned with overlapping cases filed *within a reasonably close period of time*." Response at 5. His contention is that the rule doesn't (and shouldn't) apply where the first case has nearly advanced to a jury trial and the second has only just begun. *See ibid.* ("Accordingly, the fact that Norman was filed nearly 6 years prior and is near the end of its litigation indicates a substantial unlikelihood of fragmented determinations on the overlapping issues, and that application of the rule would only hamper judicial efficiency."); *see also id.* at 6 ("Where, as here, the "first-filed" action is on the eve of trial after substantial motion practice, there lacks any promotion of judicial efficiency in applying the first-to-file rule to join the actions.").

But there's no such exception to the first-to-file rule. The fact is the *Norman* Case was filed many years before our case, so the "chronology" factor weighs strongly in favor of a stay. *See, e.g.*, *Alers v. Robinhood Fin. LLC*, 2022 WL 2431522, at *2 (S.D. Fla. July 1, 2022) (Rosenberg, J.) ("[T]here is no question that the California action was filed in December 2020, whereas this action was filed almost a year later in August 2021. This factor favors the application of the [first-filed] rule."); *Swisher Int'l, Inc. v. United States Food & Drug Admin.*, 2021 WL 4173841, at *6 (M.D. Fla. Sept. 7, 2021) (Davis, J.) ("The Cigar Association Case was filed on July 15, 2016, which is approximately five years prior to this case being filed."); *Women's Choice Pharms., LLC v. Rook Pharms., Inc.*, 2016 WL 6600438, at *2 (S.D. Fla. Nov. 8, 2016) (Bloom, J.) ("First, and most obvious, is the chronology of the two actions, which

4

is not in dispute. Specifically, the MS action was filed on March 22, 2016, whereas the FL action was not filed until August 30, 2016.").

And Reyes's cases—intended to persuade us *not* to apply the chronology factor mechanically to avoid "hamper[ing] judicial efficiency[,]" Response at 5—are "entirely inapposite[,]" Reply at 5. In *Cardenas*, the mere fact that "the chronology of *Salas* [the earlier-filed case] and this lawsuit are not in harmony" wasn't the driving force behind the district court's decision. 2019 WL 4705843, at *3. The court also found that the proposed transferee court had "declined in separate orders to accept transfer" of other similar cases and that "[t]he collection of defendants in this lawsuit is substantially dissimilar to the sole defendant" in the earlier-filed case. *Id.* at *2–3. Likewise, in *Vestagen Protective Technologies, Inc. v. Beyer*, 2017 WL 11725808, at *2 (M.D. Fla. July 13, 2017) (Byron, J.), the court's decision not to follow the first-filed rule was based on a finding that "the similarities between the two actions do not meet the Eleventh Circuit's 'substantial overlap' standard"—and had nothing to do with the fact that the second case was filed much later than the first. *Id.* at *2. In short, Reyes hasn't shown that there's a "judicial economy" exception to the "chronology" factor—nor has he persuaded us that, even if there were such an exception, we should apply it in this case. The first factor thus strongly favors a stay.

*Second*, although the parties in the two cases aren't identical, they are sufficiently similar. *See Chapman*, 2017 3124186, at *2 ("[P]recise identity of the parties is not required under the first-filed rule." (cleaned up)). Both cases involve the same defendant, Trans Union. And the plaintiffs, while not identical, significantly overlap. The certified class in the *Norman* Case is "[f]or the period beginning two years prior to the filing of the Complaint and through the time of judgment, all persons residing in the United States and its Territories to whom Trans Union sent its '502 Letter' in response to a written dispute of an inquiry." *Norman* Case Order Certifying Class [ECF No. 33-3] ¶ 8. Here, the Plaintiff's proposed class covers "the period beginning two years prior to the filing of this action and

5

through the time of class certification" and includes "all persons residing in the United States and its Territories to whom Trans Union sent a letter materially identical to the letter it sent to Plaintiff." Amended Complaint ¶ 45. Both classes are thus "made up of consumers that allegedly disputed hard inquiries and received form letters in response from TransUnion are, if not identical, substantially overlapping." Motion at 8.

Reyes counters that "[t]he *Norman* class is narrowly limited to those who received the specific '502 Letter'" and that the "differentiating language between the letter received by Plaintiff and the '502 Letter' is facially material[.]" Response at 7–8. But the "502" letter and the letter our Plaintiff received *are* substantively similar. *See* Reply at 7 (comparing the language from 502 Letter to Reyes's letter). As relevant here, *both* letters put the onus on the consumer to contact the creditor to correct any errors—which (the plaintiffs in both cases suggest) establishes Trans Union's unwillingness, in violation of the FCRA, to conduct its *own* investigation. *Compare* 502 Letter [ECF No. 37-3] at 2 ("If you believe that an inquiry on your credit report was made without permissible purpose, then you may wish to contact the creditor directly[.]"), *with* Reyes Letter [ECF No. 37-4] at 2 ("If you think an inquiry was made without a permissible purpose, we strongly encourage you to reach out to company who received your credit report to find out whether they have opened an account in your name."). While there may be a class of people who received a letter like Reyes's, but *not* the "502" letter, and who are thus *not* covered by the *Norman* Case, there's still a substantial overlap between our proposed class and the *Norman* class. This factor thus likewise favors a stay. *See Figueroa v. Hertz Corp.*, 2019 WL 13294658, at *2 (M.D. Fla. Aug. 15, 2019) (Chappell, J.) ("[Figueroa says] the first-filed rule does not apply because the proposed classes are not identical. But minor differences between class definitions does not defeat the first-filed rule."); *Tappin v. TForce Freight, Inc.*, 2022 WL 3567126, at *2 (E.D. Cal. Aug. 18, 2022) ("In class action cases, district courts have required that the classes 'represent at least some of the same individuals.'" (citation omitted)); *Urbina v. Freedom Mortg. Corp.*, 2020 WL 6728935, at *4

(E.D. Cal. Nov. 16, 2020) ("Courts have held that proposed classes in class action lawsuits are substantially similar where both classes seek to represent at least some of the same individuals." (citation omitted)).

*Third*, the issues presented in the two cases "are sufficiently similar or substantially overlap." *Elliott v. Williams*, 549 F. Supp. 3d 1333, 1339 (S.D. Fla. 2021) (Altman, J.). "Each case alleges that TransUnion fails to investigate hard inquiries in violation of 15 U.S.C. § 1681i," and the allegations in Reyes's Amended Complaint "are drawn almost entirely from the *Norman* Complaint." Motion at 8. Indeed, Reyes previously *conceded* that the plaintiffs in the *Norman* Case are "asserting claims for materially identical conduct[.]" Opposition to Defendant's Motion to Dismiss Class Action Complaint [ECF No. 24] at 11. Reyes's Response is unsurprisingly silent on this factor, *see generally* Response — which is reason enough to weigh it for Trans Union, *see also United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."); *Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.").

All three factors, in sum, weigh heavily in favor of our application of the first-filed rule.

There are "several avenues" available to a district court if it finds that the first-filed rule applies: "dismiss, stay, or consolidate." *Figueroa*, 2019 WL 13294658, at *4. "District courts have the inherent power to stay litigation pending the outcome of a related proceeding in another forum." *ASS Armor,*

7

*LLC v. Under Armour, Inc.*, 2015 WL 2155724, at *2 (S.D. Fla. May 7, 2015) (Cooke, J.). Trans Union asks us to dismiss this case. *See* Motion at 9 ("Finally, dismissal without prejudice of Plaintiff's Amended Complaint is the appropriate remedy."). But we think a stay is more appropriate because: (1) there may be *some* potential class members who *might* not be covered by the class in the *Norman* Case; and (2) the *Norman* Case is set for trial and should be resolved in a matter of months. *See DocRX, Inc. v. InforMD, LLC*, 2015 WL 3503170, at *5 (S.D. Ala. June 2, 2015) (DuBose, J.) ("[S]everal courts have opined that a stay of the second-filed action is a preferred remedy[.]"). Once the *Norman* Case has been resolved, we'll be in a better position to decide whether there's anything left to adjudicate here.

\*     \*     \*

After careful review—and for the reasons set out in this Order—we hereby **ORDER** and **ADJUDGE** as follows:

1. The Defendant's Motion to Dismiss or Stay Under First-Filed Rule [ECF No. 33] is **GRANTED**. This case is **STAYED** and **administratively CLOSED** pending a final judgment in *Norman. v. Trans Union LLC*, No. 2:18-cv-05225 (E.D. Pa. filed Dec. 5, 2018)

2. Within **fourteen days** of an order entering final judgment in *Norman v. Trans Union LLC*, No. 2:18-cv-05225 (E.D. Pa. filed Dec. 5, 2018), the parties shall file a joint status report, telling us what happened in that case and stating their positions on what should happen in our case.

3. All deadlines and hearings are **TERMINATED**, and any pending motions are **DENIED as MOOT**.

8

**DONE AND ORDERED** in the Southern District of Florida on November 12, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record